ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENNIFER GLICK,

               Plaintiff,

-vs-

WAKEFERN FOOD CORP.,

               Defendant.
------------------------------------------------------------X

07 CIV. 0566

COMPLAINT

JURY TRIAL DEMANDED

ECF Case

BRIEANT

## INTRODUCTION

1. Plaintiff brings this action to redress the unlawful sexual harassment and retaliation to which she was subjected in the course of her employment.

## PARTIES

2. Plaintiff Jennifer Glick is a woman residing in Rock Tavern, County of Orange, within this Judicial district.

3. Defendant Wakefern Food Corporation is a corporation organized pursuant to the laws of the State of New York. It may sue and be sued.

## JURISDICTION

4. As plaintiff brings this action to enforce her rights under Title VII of the Civil Rights Act of 1964, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 (3) & (4) and 42 U.S.C. § 2000e et seq.

5. On June 13, 2006, plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission. As plaintiff received her Right to Sue letter on December 22, 2006, this claim is properly filed in Federal court.

6. Pursuant to 28 U.S.C. § 1367, this Court has subject matter jurisdiction over the

State law causes of action which derive from the same nucleus of operative facts as the Federal cause of action.

**FACTUAL AVERMENTS**

7. In September 2005, plaintiff commenced working as a Bakery Manager for Wakefern Food Corp. After training for three months, in December 2005, she was assigned to the Shop-Rite in New Paltz, New York. The Bakery is attached to the Deli, where the Deli Manager, Mark Jack, worked.

8. In January 2006, Jack began subjecting plaintiff to a hostile work environment on the basis of her gender. Among other things, Jack – who is approximately 15 years older than plaintiff – began repeatedly asking her out on dates. Plaintiff rejected his advances each time.

9. Within a few weeks, however, Jack began placing "gifts" in plaintiff's vehicle, including clothing, jewelry and a box of tampons. He also left a leg razor kit in her truck. When plaintiff told Jack to stay out of her truck and that she did not appreciate his gestures, he said that he wanted to help with plaintiff's "every day needs."

10. A few weeks later, on Valentine's Day, Jack told plaintiff that he bought her an engagement ring but that she could not have it until she dated him. Plaintiff said that she did not want the ring.

11. At this time, Jack began calling plaintiff at home at all hours of the night and hanging up, occasionally leaving vulgar messages. Meanwhile, Jack re-arranged his work schedule to match plaintiff's.

12. In early March 2006, Jack entered the freezer at work, grabbed plaintiff's face and tried to place his tongue in her mouth. Plaintiff yelled at him not to touch her and quickly left the freezer.

13. On another occasion, Jack entered the freezer and placed his hands between plaintiff's legs and touched her crotch. Plaintiff again yelled at him not to touch her and left the freezer immediately.

14. In the scanning room, Jack approached plaintiff from behind and pulled away her pants to view her underwear.

15. After the second incident in the freezer, plaintiff complained about the harassment to Joanne Gracie, who called in the store manager, Andrew Hollway. Plaintiff told them about Jack's verbal and physical harassment, which she described as a "sexual assault." For a brief period following this meeting, Jack left plaintiff alone, but approximately two weeks later he commenced talking with plaintiff again. He repeatedly "apologized" and gave plaintiff a "friendship" card. Plaintiff asked him to leave her alone and she tried to avoid him, although she had to deal with him professionally.

16. Despite plaintiff's request that Jack leave her alone, he persisted in approaching plaintiff and trying to talk with her. She later observed Jack stalking her by driving past her house on more than one occasion. This activity made plaintiff fear for her physical safety.

17. On May 11, 2006, Jack text-messaged a vulgar and sexual message about plaintiff to her boyfriend. That day, plaintiff complained to Gracie about the continued

harassment. Plaintiff also reported the harassment to the State police, who warned Jack to stay away from her.

18. On May 12, 2006, Hollway and other store officials told plaintiff there would be an investigation into her complaint. A few days later, during a meeting with Cindy Bowman, Hollway and other managers, plaintiff complained that she was afraid to work with Jack and that the store had not endeavored to thoroughly investigate her claim. However, Bowman made statements which made clear that the store was not taking her complaint seriously. Bowman said she had taken psychology classes and that Jack was behaving "normally," like someone in love. Bowman also said that Jack was stuck on the second level of the "pyramid of human needs."

19. Plaintiff was transferred to the Shop Rite store in Ellenville, New York, on May 22, 2006. This retaliatory transfer was far from home and highly inconvenient and costly for plaintiff. Jack was also transferred. When plaintiff complained that her transfer was not fair, a store official, Al Carpenter told her that "you've brought this on yourself" and falsely said that plaintiff had taken gifts from Jack and gone on breaks with him.

20. Defendant further retaliated against plaintiff for proceeding with a charge filed with the Equal Employment Opportunity Commission. While assigned to work in the Wallkill, N.Y., store, plaintiff's manager micro-managed her employment and singled her out for criticism in an effort to drive her from the workplace.

21. Defendant failed to properly address plaintiff's complaint that Jack had subjected

4

her to a hostile work environment.

22. Defendant has further retaliated against plaintiff because she complained about the hostile work environment.

23. As a result of defendant's misconduct, plaintiff suffered lost wages and other economic damages, as well as significant physical and emotional damages.

## CAUSES OF ACTION

24. Plaintiff incorporates the allegations in ¶¶ 1-23 as if fully re-stated herein.

25. Defendant failed to properly remedy the hostile work environment to which plaintiff was subjected, in violation of Title VII of the Civil Rights Act of 1964 and the New York State Executive Law.

26. Defendant retaliated against plaintiff for complaining about sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 and the New York State Executive Law.

WHEREFORE, plaintiff prays that this Honorable Court:

a. accept jurisdiction over this action;

b. empanel a jury to fairly hear and decide this action;

c. award to plaintiff compensatory damages to redress her physical and emotional pain and suffering;

d. award to plaintiff punitive damages for defendant's willful violation of Title VII of the Civil Rights Act of 1964;

e. award to plaintiff reasonable attorneys' fees and costs expended in litigating this action; and

  f. award such other relief deemed just and proper.

Dated: January 19, 2007

Respectfully submitted,

*/s/ Stephen Bergstein*

STEPHEN BERGSTEIN
HELEN G. ULLRICH

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, N.Y. 10918
(845) 469-1277
Counsel for plaintiff